No. 24-1341

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————

STEVE FORD, individually and on behalf of all others similarly situated,

Plaintiffs-Appellees,

v.

GENESIS FINANCIAL SOLUTIONS, INC. and
SPRING OAKS CAPITAL SPV, LLC,

Defendants-Appellants,

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
No. 8:23-cv-02156-DLB

———————————

## OPENING BRIEF OF APPELLANTS

———————————

SUBMITTED BY:

Ryan K. McComber
Texas Bar No. 24041428
ryan.mccomber@figdav.com
Timothy A. Daniels
Texas Bar No. 05375190
tim.daniels@figdav.com
**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 – fax

ATTORNEYS FOR DEFENDANT
GENESIS FS CARD SERVICES, INC.

John K. Rossman
john.rossman@rossmanattorneygroup.com
Rossman Attorney Group, PLLC
PO Box 24140
Edina, MN 55424
952-201-1507-Phone

ATTORNEYS FOR APPELLANT
SPRING OAKS CAPITAL, SPV, LLC

## DISCLOSURE STATEMENT (Appellant, Genesis)

• In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
• In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
• In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
• Any corporate amicus curiae must file a disclosure statement.
• Counsel has a continuing duty to update the disclosure statement.

No. 24-1341        Caption: Steve Ford, et al v. Genesis Financial Solutions, Inc.
                          and Spring Oaks Capital SPV, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Genesis FS Card Services, LLC</u>
Names of Party

Who is Appellant, makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity? <u>NO</u>

2. Does party/amicus have any parent corporations?  <u>YES</u>
If yes, identify all parent corporations, including all generations of parent corporations:

> Genesis FS Card Services, LLC is a wholly-owned subsidiary of Genesis Financial Solutions, Inc.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   <u>NO</u>
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? <u>NO</u>
If yes, identify entity and nature of interest:

i

5. Is party a trade association? (amici curiae do not complete this question)  <u>NO</u>
If yes, identity any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?   <u>NO</u>
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? <u>NO</u>
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

DISCLOSURE STATEMENT (Appellant, Spring Oaks)

• In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
• In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
• In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
• Any corporate amicus curiae must file a disclosure statement.
• Counsel has a continuing duty to update the disclosure statement.

No. 24-1341        Caption: Steve Ford, et al v. Genesis Financial Solutions, Inc.
                                and Spring Oaks Capital SPV, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

Spring Oaks Capital SPV, LLC
Names of Party

Who is Appellant, makes the following disclosure:1. Is party/amicus a publicly held corporation or other publicly held entity? <u>NO</u>

2. Does party/amicus have any parent corporations?  <u>NO</u>
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    <u>NO</u>
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? <u>NO</u>
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  <u>NO</u>
If yes, identity any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?   <u>NO</u>
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim?  <u>NO</u>
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

**TABLE OF CONTENTS**

DISCLOSURE STATEMENT ................................................................. i

INTRODUCTION ............................................................................1

JURISDICTIONAL STATEMENT ......................................................3

ISSUES PRESENTED.......................................................................3

STATEMENT OF THE CASE ............................................................4

  I.   Factual Background ...................................................................4

      A.  The Complaint............................................................4

      B.  The Credit Agreement ................................................5

      C.  The Relevant Contract Provisions ...............................5

      D.  Sale and Assignment of Plaintiff's Account................8

  II.    Procedural History and Rulings on Review......................................9

SUMMARY OF THE ARGUMENT ....................................................12

STANDARD OF REVIEW ...............................................................15

ARGUMENT ..................................................................................15

  A.   Federal Arbitration Law Requires the Case be Submitted to Arbitration ......15

  B.   Assuming the Delegation Clause does not Require the Case be Sent to Arbitration, the District Court's Analysis Was Faulty .................................................21

      1.  The District Court Erred in its Choice of Law Analysis .........................21

      2.  Assuming Utah Law does not govern whether the Arbitration Provision is valid, the District Court Erred in its Interpretation of the Credit Agreement.....................................................25

          a. Utah Law...................................................................258

          b. Maryland Law............................................................325

      3.  If the Change Provision is Part of the Arbitration Provision and it Defeats Enforceability, then it Should be Severed From the Arbitration Clause ...................................................34

  C.   If the District Court's Application of Cheek is Correct, then Maryland Law is Preempted by the FAA ....................................................35

  D.   Other Arguments not Addressed by the District Court ...................36

CONCLUSION ...............................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Pages**

*Amos v. Amazon Logistics, Inc.*,
    74 F.4th 591 (4th Cir. 2023) ...............................................................20

*Archer W. Contractors, LLC v. Synalloy Fabrication, LLC*,
    No. CCB-14-3031, 2016 WL 930965 (D. Md. Mar. 11, 2016).........................21

*Arnold v. Homeaway, Inc.*,
    890 F.3d 546 (5th Cir. 2018) ...............................................12, 19, 20

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)...............................................................36

*Bailey v. Mercury Financial*,
    LLC, 2023 WL 6244591 (D. Md. Sept. 26, 2023) .................................9, 10, 21

*Baker v. Comcast Corp.*,
    2020 WL 3895411 (D. Utah July 10, 2020) ......................................24

*Harby ex rel. Brocks v. Wachovia Bank, N.A.*,
    915 A.2d 462 (Md. App. Ct. 2007)..................................................26

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)..............................................................*passim*

*Cain v. Midland Funding, LLC*,
    156 A.3D 807 (Md. 2017) .........................................................38

*Cheek v. United Healthcare of Mid-Atl, Inc.*,
    835 A.2d 656 (Md. 2003) .........................................................*passim*

*Coady v. Nationwide Motor Sales Corp.*,
    32 F.4th 288 (4th Cir. 2022) ...............................................20, 25, 26

*In re Cotton Yard Antitrust Litigation*,
    505 F.3d 274 (4th Cir. 2007) .....................................................35

*Createrra, Inc. v. Sundial, LC*,
    304 P.3d 104 (Utah App. 2013)...............................................31, 32

*DIRECTV, Inc. v. Imburgia*,
    577 U.S. 47 (2015)..........................................................................36

*Dowdy v. Santander Consumer USA, Inc.*,
    No. SAG-19-01386, 2019 WL 5455554 (D. Md. Oct. 24, 2019) ....................37

*Dziubla v. Cargill, Inc.*,
    214 Fed. Appx. 658 (9th Cir. 2006)..................................................22

*Ellsworth v. Am. Arbitration Ass'n*,
    2006 UT 77, 148 P.3d 983 (Utah 2006) ...........................................38

*Galloway v. Santander Consumer USA, Inc.*,
    819 F.3d 79 (4th Cir. 2016) ............................................................17

*Gay v. Creditinform*,
    511 F.3d 369 (3rd Cir. 2007) ..........................................................22

*Globe Indemnity Co. v. Victill Corp.*,
    208 Md. 573, 119 A.2d 423 (1956) ..................................................38

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019)..........................................................................16

*Hill v. Peoplesoft USA, Inc.*
    412 F. 540 .....................................................................................25

*Hillbery v. Nu Skin Enterprises U.S.*,
    2022 WL 219560 (D. Utah 2022)..............................................14, 24

*Holloman v. Circuit City Stores*,
    391 Md. 580 (2006) ........................................................................30

*Holloman v. Consumer Portfolio Services, Inc.*,
    2023 WL 4027036 (D. Md. June 15, 2023)........................................39

*Holt v. Katsanevas*,
    854 P.2d 575 (Utah Ct.App. 1993) ..................................................29

*Jackson v Pasadena Receivables, Inc.*,
    921 A.2d 799 (Md. 2007) .....................................................13, 23, 24

*James v. Synovus Bank*,
    No. TDC-19-1137, 2020 WL 1479115 (D. Md. Mar. 26, 2020) .................21, 22

*Johnson v. Continental Finance Company, LLC*,
    2023 WL 5804281 (D. Md. Sept 7, 2023)........................................9, 10, 21, 33

*Kelly v. Wash. Suburban Sanitary Comm.*,
    230 A.2d 672 (MD. 1967) ..............................................................................34

*Mbougo v. Robinhood Markets, Inc.*,
    2022 WL 621797 (Md. Ct. Spec. App. March 3, 2022).............................30, 33

*Noohi v. Toll Bros.*,
    708 F.3d 599 (4th Cir. 2013) .....................................................................15, 35

*Novic v. Credit One Bank, N.A.*,
    757 Fed. Appx. 263 (4th Cir. 2019)..................................................................16

*Overstreet v. Contigroup Companies, Inc.*,
    462 F.3d 409 (5th Cir. 2006) .....................................................................13, 22

*Pacific Dev., L.C. v. Orton*,
    23 P.3d 1035 (Utah Sup. Ct. 2010)...................................................................31

*Preston v. Ferrer*,
    552 U.S. 346 (2008)..........................................................................................36

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010).......................................................................12, 17, 18, 19

*Roto-Mclarty v. Santander Consumer USA, Inc.*,
    700 F.3d 690 Cir. 2012 .....................................................................................15

*Sanders v. Rowan*,
    484 A.2d 1023 (Md. App. 1984) ......................................................................38

*Senior Management, Inc. v. Capps*,
    240 Fed.Appx. 550 (4th Cir. 2007)..................................................................24

*Snow v. Chartway Fed. Cred. Union*,
    306 P.3d 868 (Utah Ct.App. 2013)..................................................................29

*USC/2005 LLC v. Trio Ventures Assoc.*,
   190 A.3d 244 (Md. 2018) ...................................................................33

**Statutes**

9 U.S.C. §§ 3-4.........................................................................................3

9 U.S.C. § 16(a)(1)(A)-(B) .......................................................................3

28 U.S.C. § 1332(d) ..................................................................................3

Class Action Fairness Act .....................................................................3, 9

Federal Arbitration Act ....................................................................passim

Maryland Uniform Arbitration Act.......................................................32

Md. Code Ann. Com. Law §§ 12-301. ...................................................5

Utah Arbitration Act ............................................................................31

Utah Code Annotated § 25-5-4(e) (West 1953)....................................17

**Other Authorities**

Law, BLACK'S LAW DICTIONARY (8th ed. 2004)..............................14, 33

## **INTRODUCTION**

The District Court, applying Maryland law, refused to enforce the parties' arbitration agreement even though it required both parties to arbitrate disputes between them. In doing so the District Court relied on a provision in the broader contract, not referenced in the arbitration contract, that provided "subject to the limitations of applicable law" terms and conditions in the contract could be changed. JA072-JA073.  The District Court's decision is in error for several reasons.

First, having recognized that the parties entered into an arbitration agreement that is facially valid under Maryland law, the District Court should have ordered arbitration in conformity with the Delegation Clause which provides the arbitrator is to decide any dispute "over the validity of this Agreement to arbitrate disputes or of this entire Agreement."  JA073.  Instead, the District Court attempted to determine which clauses in the overall Credit Agreement applied to the Arbitration Provision and how applicable law may or may not limit the ability to modify the Arbitration Provision.  However, under the Delegation Clause these questions go to the validity of the Arbitration Provision, which was entered into by the parties, and are therefore for the arbitrator to decide.

Second, the Credit Agreement contained a Choice of Law Provision which designated that federal law and, to the extent not preempted, Utah law governed the "interpretation and enforcement" of the contract.  JA073.  Yet, the District Court

1

refused to apply the designated law, reasoning that the chosen law did not apply "unless and until" a valid arbitration agreement was found. The District Court erred in not applying the choice of law provision and instead applying Maryland law in determining whether the arbitration agreement was supported by mutual consideration, specifically *Cheek v. United Healthcare of Mid-Atl, Inc.,* 835 A.2d 656 (Md. 2003) (hereinafter *"Cheek"*). In this regard, unlike Maryland law, Utah law provides that consideration supporting the Credit Agreement also supports the Arbitration Provision.

Even disregarding the above errors, the District Court erred in its interpretation of Maryland law and Utah law when attempting to determine how applicable law might restrict the change clause. With respect to Utah law, the District Court interpreted it based on Maryland law, which the District Court found restricted its analysis. Specifically, the District Court held Maryland law required that it could not consider that the Arbitration Agreement was part of the Credit Agreement, thus restricting its analysis of the change clause. With respect to Maryland law, the District Court found that there were no limitations on the ability to change or modify the Arbitration Provision since "applicable law" did not include case law. Accordingly, the District Court did not consider limitations on the change clause that derived from Maryland case law, such as *Cheek*. Both of these determinations, as well as others concerning state law, were in error.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this litigation pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"), because this is a putative class action with more than 100 putative class members and the amount in controversy with respect to putative class members is in excess of $5,000,000, and there is minimal diversity since the citizenship of the majority, if not all plaintiffs, is different from at least one defendant. This Court has appellate jurisdiction under 9 U.S.C. § 16(a)(1)(A) -(B) because this is an appeal of an order denying a motion to compel arbitration and stay proceedings under 9 U.S.C. §§ 3-4.

## ISSUES PRESENTED

1. Whether the District Court erred in not ordering the case to arbitration pursuant to the Delegation Clause since the Arbitration Provision was valid on its face and did not reference or incorporate the Change Clause.

2. Whether the District Court erred in not applying the law chosen by the parties in the Credit Agreement when determining the validity of the Arbitration Provision.

3. Whether the District Court erred in its interpretation of the relevant clauses of the Credit Agreement when it determined the Arbitration Provision was illusory.

4. Whether the District Court erred by not severing or amending the Change Clause that was imputed to be part of the Arbitration Provision, if such clause made the Arbitration Provision unenforceable.

5. Assuming the District Court's application of Maryland Law was correct, whether Maryland law is pre-empted by the Federal Arbitration Act.

## STATEMENT OF THE CASE

I. **Factual Background**

A. **The Complaint**

Steve Ford ("Plaintiff") alleges that he incurred a debt and made payments in connection with a Wayfair credit card account (the "Account") issued by First Electronic Bank ("FEB") and serviced by Genesis Financial Solutions, Inc. ("Genesis")").    JA036-037, ¶¶ 118-119.    After nonpayment by Plaintiff, all ownership interest in the account and debt were subsequently transferred to Spring Oaks Capital SPV, LLC ("Spring Oaks").  JA037, ¶ 125.  Spring Oaks, as the owner of the account and outstanding debt, sought to recover the amount due in a suit filed in Maryland state court.  JA037, ¶ 126.  Plaintiff asserts the claims made in the Complaint "constitute defenses to Spring Oaks' claim against him." JA038, ¶ 128.

The Complaint alleges that Genesis "marketed, originated, serviced, and collected on … credit card loan products" without a required license to do so under Maryland law.  JA021, ¶ 34.  Plaintiff confirms he received a credit card from Genesis and that he "accepted and used the credit card in Maryland and made payments on the credit card in Maryland. JA036-37, ¶¶ 118-119.  Based on these and other allegations, the Complaint alleges Genesis violated several provisions of the Maryland Credit Service Business Act (the "MCSBA") and the Maryland

Consumer Loan Law, Md. Code Ann. Com. Law §§ 12-301, *et seq.* (the "MCCL"). JA015-18, ¶¶ 6-21.

### B.    The Credit Agreement

On or about June 23, 2019, the Account was opened.  JA065-066, ¶ 3.  The underlying credit card was mailed to Plaintiff with the First Electronic Bank Cardholder Agreement (the "Credit Agreement").  JA066.  Plaintiff received the credit card, Credit Agreement, and monthly statements since Plaintiff (a) made two purchases with the card and (b) made a payment on the Account. JA066, ¶¶ 5-7. Plaintiff never sent a notice rejecting the arbitration provision in the Agreement. JA066, ¶ 6.  Plaintiff used the Account and incurred a balance, which was charged off by FEB on March 25, 2021.  JA066, ¶¶ 7-9.

### C.    The Relevant Contract Provisions

The Credit Agreement includes the following language pertinent to arbitration (the "Arbitration Provision"):

Arbitration of Disputes Provision.

PLEASE READ THIS ARBITRATION OF DISPUTES PROVISION CAREFULLY. UNLESS YOU SEND US THE REJECTION NOTICE DESCRIBED BELOW, THIS PROVISION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.

5

This provision replaces any existing arbitration provision with us and will stay in force no matter what happens to your Account, including the closing of your Account. Except as expressly provided below, you and we must arbitrate individually, by binding arbitration under the Federal Arbitration Act ("FAA"), any dispute or claim between you, any joint card holder and/or authorized user,  on the one hand, and us, our affiliates and agents, on the other hand, if the dispute or claim arises out of or is related to (a) this Agreement (including without limitation, any dispute over the validity of this Agreement to arbitrate disputes or of this entire Agreement), or (b) your Account, or (c) any relationship resulting from this Agreement, or (d) any insurance or other service related to your Account, or (e) any other agreement related to your Account (including prior agreements) or any such service, or (f) breach of this Agreement or any other such agreement, whether based on statute, contract, tort or any other legal theory (any "Claim").

YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION.

The arbitration will be administered by the American Arbitration Association (the "AAA") under the rules in effect at the time an arbitration is commenced that are applicable to the resolution of consumer disputes.

If any portion of this section regarding arbitration of disputes shall be deemed to be unenforceable, the remainder of this Section shall be given full force and effect.

JA073 (Capitalization in original). The Arbitration Provision includes a delegation clause which provides disputes "over the validity of this Agreement to arbitrate disputes or of this entire Agreement" are subject to arbitration (the "Delegation Clause"). JA073.

The Credit Agreement also contains a general "Change in Terms" provision (the "Change Clause"), which is not contained in or specifically referenced by the Arbitration Provision, that states:

> Subject to the limitations of applicable law, we may, at any time, change or remove any of the terms and conditions of, or add new terms or conditions to, this Agreement. If required by applicable law, we will mail written notice of such a change to you in the manner required by such law. As of the effective date, the changed or new terms will apply to new Purchases and to the outstanding balance of your Account, subject to the limitations of applicable law.

JA072-073.

Finally, the Credit Agreement contains a choice of law provision (the "Choice of Law Provision") that provides:

> Except as expressly set forth in the Arbitration of Disputes Provision in the Agreement, this Agreement and the interpretation and enforcement thereof (including but not limited to the exportation of interest rates) will be governed by Federal law that applies to us, and to the extent not preempted by Federal law, the laws of the State of Utah, without regard to its conflicts of law provisions and principles. If there is any conflict between any of the terms and conditions of this Agreement and applicable Federal or State law, this Agreement will be considered changed to the extent necessary to comply with the applicable law.

JA073.

The terms of the Credit Agreement were never amended or changed. JA363. Further, it is the practice of Genesis as FEB's servicer to mail any updated terms to the Credit Agreement to the accountholder, and the accountholder confirms acceptance of the updated terms and conditions of the Credit Agreement by using

their account. JA363. If the Arbitration Provision was amended or changed as part of any change to the Credit Agreement, the accountholder would be given the option to reject the updated arbitration provision prior to the effective date. JA363.

### D.    Sale and Assignment of Plaintiff's Account

At the time the Account was charged off, FEB conveyed the Account and underlying receivable to Genesis.  JA066, ¶¶ 9 and 10.  The Agreement specifically provides that FEB "may assign your Account or amounts you owe on your Account to any other person at any time and the assignee will take our place under the Agreement with respect to all agreements and interests transferred."  JA073.

FEB sold and conveyed to Genesis the receivables to Plaintiff's Account (the "Receivables") pursuant to the Receivables Sales Agreement.  JA066-067.  Genesis then transferred the Receivables to GPCC II, LLC, an affiliate of Genesis, pursuant to a Receivables Purchase Agreement.  JA067.  On April 30, 2021, Genesis and GPCC II, LLC, sold the Account and Receivables to DNF Associates, LLC ("DNF"), which included the transfer of all rights, title, and interest to Plaintiff's Account.  JA067.

On July 23, 2021, an affiliate of Spring Oaks purchased the Account from DNF, which included the assignment of all DNF's interest in Plaintiff's Account. JA161.  The affiliate then assigned the legal title to the Account to Spring Oaks, and Spring Oaks is the current owner of Plaintiff's Account and Receivables.  JA161.

## II.    <u>Procedural History and Rulings on Review</u>

On July 10, 2023, Plaintiff filed this action against Genesis and Spring Oaks (collectively "Defendants") in Maryland State Court on behalf of himself and a statewide Maryland putative class. JA014. Defendants timely removed the case to the District Court on the basis of federal jurisdiction under CAFA.  JA007.

On August 30, 2023, Defendants filed their motion to dismiss and compel arbitration or, alternatively, stay proceedings (the "Motion"). JA048.  After the Motion was filed, but before Plaintiff filed a response to the Motion, another district court in Maryland decided *Johnson v. Continental Finance Company, LLC*, 2023 WL 5804281 (D. Md. Sept 7, 2023) (hereinafter "*Continental*"), which involved a credit agreement and the denial of a motion to compel arbitration.  JA260.  In his response to the Motion, Plaintiff relied on *Continental* to argue the Motion should be denied.  JA252-288.  Prior to the date for reply, another district court in Maryland issued an opinion in a case involving a credit agreement in which a motion to compel arbitration was denied, *Bailey v. Mercury Financial,* LLC, 2023 WL 6244591 (D. Md. Sept. 26, 2023) (hereinafter "*Mercury*"), which Plaintiff brought to the attention of the District Court.  JA340-347.  Given the recent decisions in *Continental* and *Mercury*, with the District Court's permission the parties engaged in additional

briefing, including Plaintiff filing a surreply JA391-401, and Defendants filing a response to the surreply, JA402-407.[1]

On March 28, 2024, the District Court denied the Motion relying in part on the decisions in *Continental* and *Mercury*. JA408-431. The District Court declined to apply the Choice of Law Provision in the Agreement "unless and until the Court determines whether an arbitration agreement exists." JA413. The District Court then conducted a choice of law analysis and determined Maryland law applied to the question of whether an arbitration agreement had been formed. JA415. The District Court found the Arbitration Clause contained mutual promises to arbitrate thus satisfying Maryland law with respect to consideration. JA417. However, it held the promise to arbitrate was illusory since the Change Clause in the Credit Agreement, which did not reference the Arbitration Provision, allowed for the unilateral ability of modify the Arbitration Provision. JA418.

The District Court recognized that the Maryland Supreme Court had never "addressed whether courts should consider a clause that generally applies to the entire contract as part of the parties' agreement to arbitrate when the arbitration clause does not expressly incorporate that extrinsic clause, but determined a state appellate court and some federal district courts had done so and decided to follow

---

[1] Both *Continental* and *Mercury* are currently on appeal in this Court. *See* No. 23-2133, *Bailey v. Mercury Financial* and No. 23-2047, *Johnson v. Continental Finance*.

10

these decisions. JA418-420.

The District Court rejected Defendants' argument that the validity of the Arbitration Provision should have been determined under Utah law pursuant to the Choice of Law Provision. JA413.  The District Court further found that it did not need to decide if the Choice of Law Provision should be used to interpret the Change Clause even though the Change Clause was limited by "applicable law."  The District Court based this decision on its view that the Change Clause had no meaningful restrictions under either Maryland or Utah law. JA424-430.  However, the District Court based its decision on a limited review of Utah law because it determined that, under *Cheek*, it could not consider whether the Arbitration Provision was part of a Credit Agreement. JA428.  With respect to Maryland law, the District Court determined it could only look to Maryland statutes since "applicable law" did not include case law.  JA425.  Based on this restricted analysis of "applicable law," the District Court found there were no restrictions on Change Clause modifying the Arbitration Provision, so it lacked consideration and was unenforceable.  JA430-431.

On April 11, 2024, Genesis and Spring Oaks timely filed their Notice of Appeal.  JA433.

## SUMMARY OF THE ARGUMENT

The District Court made two critical errors in deciding not to enforce the facially valid Arbitration Provision. First, after determining that the Arbitration Provision was supported by consideration since each party agreed to arbitrate disputes between them, the District Court decided look outside the terms of the Arbitration Provision and apply other provisions in the Credit Agreement, in particular the Change Clause, to determine if the consideration failed. However, the Arbitration Provision did not reference or incorporate the Change Clause, so it was beyond the four corners of the Arbitration Provision. The correct course under both Maryland law and Federal arbitration law was to send any remaining issues concerning the enforceability of the Arbitration Provision to the arbitrator pursuant to the Delegation Clause.

In this regard, there was no dispute that the parties entered into the Credit Agreement and the Arbitration Provision, and the District Court found the Arbitration Provision contained a mutual obligation to arbitrate. That is the end of the analysis under Federal law since at that point it is clear the parties entered into a facially valid arbitration contract. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 n.2 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 441 n.1 (2006); *see also Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) (Holding an argument that an arbitration contract was illusory was for the

12

arbitrator to decide when there was no question the arbitration contract was entered into as part of a larger agreement). The same is also true under Maryland law since a court is limited to only examining the Arbitration Provision to determine whether it was supported by consideration and must avoid making even implicit determinations about the underlying Credit Agreement. *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656 (Md. 2003).

Second, the District Court refused to enforce the choice of law provision in the Credit Agreement, reasoning its enforcement "presupposes an enforceable [arbitration] agreement exists." JA413. This determination runs counter to Maryland law which enforces choice of law provisions. *See Jackson v Pasadena Receivables, Inc.*, 921 A.2d 799, 803 (Md. 2007) (stating "this Court has long recognized the ability of contracting parties to specify in their contract that the laws of a particular State will apply in a dispute over the validity, construction, or enforceability of the contract"). Similarly, several Federal Circuit Courts have determined that a choice of law provision in an integrated contract requires the chosen law be used to determine whether an arbitration contract is valid and enforceable. *See, e.g., Overstreet v. Contigroup Companies, Inc.*, 462 F.3d 409, 411 (5th Cir. 2006). Here, the District Court erred in not applying Utah law in determining whether the Arbitration Provision was valid and enforceable, particularly because Utah law

provides that consideration for an integrated contract "covers the arbitration clause as well." *Hillbery v. Nu Skin Enterprises U.S.*, 2022 WL 219560, *5 (D. Utah 2022).

The failure to enforce the Choice of Law Provision and to enforce the Delegation Clause is sufficient error to reverse the District Court. Nevertheless, the District Court made additional errors, in some measure caused by the above errors, in analyzing the terms, and their interplay, of the Credit Agreement and Arbitration Provision. Having determined the Choice of Law clause was not enforceable with respect to determining the Arbitration Provision's enforceability, the District Court had to address how to interpret the Change Clause which was explicitly limited by "applicable law." The District Court chose to look at whether either Maryland law or Utah law restricted the unilateral ability to change or modify arbitration agreements. The District Court committed error in the analysis of both State's laws.

With respect to the Maryland law, the District Court determined that "applicable law" did not include case law, such as *Cheek* and its progeny, and could find no other restrictions. However, the commonly understood meaning of "applicable law" includes case law. *See* Law, BLACK'S LAW DICTIONARY (8th ed. 2004). Accordingly, once "applicable law" is given its commonly understood meaning, it was error for the District Court not to find *Cheek* and its progeny created restrictions on the ability to validly change or modify arbitration contracts, which would restrict the Change Clause.

With respect to Utah law, the District Court was only considering if it contained restrictions on the ability to modify an arbitration contract, not whether it governed whether the arbitration contract was valid. Given this limited analysis, the District Court found that under *Cheek* it could not consider any argument that required recognition that the Arbitration Provision was part of a Credit Agreement. This error was based on the District Court's initial decision that *Cheek* allowed for the consideration of terms outside the Arbitration Provision. Indeed, the District Court's entire analysis of State law flowed from the failure to apply Utah law in its entirety in determining whether the Arbitration Provision was supported by consideration.

## STANDARD OF REVIEW

This Court reviews de novo a district court's determination of arbitrability, giving due regard to the federal policy favoring arbitration. *Noohi v. Toll Bros.,* 708 F.3d 599, 605 (4th Cir. 2013).

## ARGUMENT

### A.   Federal Arbitration Law Requires the Case be Submitted to Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, clearly applies to the enforcement of the Arbitration Provision. First, the Agreement involves interstate commerce since it relates to credit provided by a Utah lender to a Maryland citizen. *See Roto-Mclarty v. Santander Consumer USA, Inc.,* 700 F.3d 690, 697 4th

Cir. 2012) (Holding "reliance upon funds from a foreign source in a transaction is sufficient to implicate the FAA").  Second, the Agreement itself states that "you and we must arbitrate individually, by binding arbitration under the Federal Arbitration Act."  JA073.

The Arbitration Provision contains a Delegation Clause that provides any dispute or claim that "arises out of or is related to (a) this Agreement (including without limitation, any dispute over the validity of this Agreement to arbitrate disputes or of this entire Agreement)" is subject to arbitration. JA073. This Court has previously held that almost identical language is broad and delegates to the arbitrator questions regarding arbitrability. *See Novic v. Credit One Bank, N.A.*, 757 Fed. Appx. 263, 266 (4th Cir. 2019).  Since the Arbitration Provision includes the Delegation Clause, the Supreme Court has set forth the appropriate analysis under the FAA.

As noted by the Supreme Court, the FAA "created a body of federal substantive law" which is "applicable in state and federal courts*." Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445 (2006) (citations omitted).  An arbitration agreement may provide that an arbitrator "will resolve threshold arbitrability questions as well as the underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 586 U.S. 63, 65 (2019).  An agreement which provides that the arbitrator will decide whether a dispute is subject to arbitration "is simply

16

an additional, antecedent agreement … and the FAA operates on this additional agreement just as it does on any other". *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Finally, both the Arbitration Provision and Delegation Clause are considered severable from the contract as a whole and from each other such that unless each provision is challenged, "the issue of the contracts validity is considered by the arbitrator in the first instances." *Buckeye*, 546 U.S. at 445-46.

Here, there is no dispute that Plaintiff entered into the Credit Agreement containing the Arbitration Provision. In this regard, Plaintiff does not dispute (1) he applied for the credit, (2) he was provided the Credit Agreement which contained the Arbitration Provision, and (3) and he used the credit to make purchases. Under both Maryland and Utah law this establishes that the parties entered into a valid credit agreement. *See* Utah Code Annotated § 25-5-4(e) (West 1953); *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 86-87 (4th Cir. 2016). Further, as recognized by the District Court, the Arbitration Provision, including the Delegation Clause, was facially valid since the "mutual promise to arbitrate is sufficient consideration." JA417, citing *Holmes v. Coverall N. Am., Inc.*, 649 A.2d 365, 371 (Md. 1994). Finally, the Arbitration Provision does not incorporate or reference the Change Clause in the Credit Agreement.

At this point the District Court's analysis should have been over and, pursuant to the Delegation Clause, the case sent to arbitration for the arbitrator to address any

validity issues.  The Credit Agreement and Arbitration Agreement had been "concluded" by the parties, *i.e.*, it was clear the parties had entered into the agreements under federal law.  *Rent-A-Center*, 561 U.S. at 70 fn.2, citing *Buckeye*, 546 U.S. at 444, n.1.  Instead, the District Court, applying Maryland law, attempted to determine what provisions of the overall Credit Agreement could make the facially valid Arbitration Provision illusory.  Specifically, purporting to apply the reasoning in *Cheek v. United Healthcare of the Mid-Atlantic, Inc.*, 835 A.2d 656 (Md. 2003) (hereinafter "*Cheek*"), the District Court attempted to determine which clauses it could consider, or consider in only a limited fashion, or could not consider at all.  The District Court, for example:

(1) refused to consider the choice of law clause as part of the arbitration contract "because it presupposes an enforceable [arbitration] agreement exists"; JA413-414

(2) considered the Change Provision, although recognizing that the Maryland Supreme Court had never addressed considering clauses that do not reference and are not referenced by the arbitration contract in applying the *Cheek* analysis. JA417-421

(3) enforced the Change Clause which is "subject to the limitations of applicable law" without determining what "applicable law" actually applies,

18

although determining that "applicable law" does not include case law such as *Cheek*.
JA424, JA425

(4) applied a theoretical analysis of the applicable Utah statute of frauds,
which requires a credit agreement to be in writing and thus any amendment or
change to be in writing, by refusing to consider that the Arbitration Provision is part
of the integrated Credit Agreement. JA428 ("Because of this stage the Court cannot
see the arbitration agreement as part of the credit agreement, the Court must
conclude that the Utah statute of frauds does not apply".)

In essence, after determining the Credit Agreement was supported by mutual
consideration on its face, the District Court searched for other provisions of the
Credit Agreement to determine if that consideration failed.  Under controlling
Supreme Court authority, these validity issues, particularly given the decisions
necessary to determine which provisions of the Credit Agreement could be
considered and how, should have been sent to arbitration for the arbitrator to decide
pursuant to the Delegation Clause. Indeed, in a similar situation another Circuit
Court did just that. *See Arnold v. Homeaway, Inc.*, 890 F.3d 546 (5th Cir. 2018).

In *Arnold*, the court recognized that the Supreme Court made a distinction
between challenges to "validity" or "enforceability" and challenges to "formation"
or "existence." *Id.* at 550, citing *Rent-A-Center*, 561 U.S. 69, 70 n.2 and *Buckeye*,
546 U.S. 440, 441, n.1. *Arnold* nevertheless held that an argument that the arbitration

contract was illusory was a "validly" or "enforceability" challenge when there was no question a contract was entered into and the challenged arbitration clause was part of an integrated contract. *Arnold, 890 F.3d at 550-51; see also Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 595, n.4 (4th Cir. 2023) (noting that a challenge to an agreement as illusory based on a change clause is one of contract validity, not formation, and is a matter of enforceability); *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 293 (4th Cir. 2022) (the question of whether an arbitration agreement is illusory went to whether the contract was "valid" or "enforceable").

As evidenced by this case, once a court must go beyond the plain terms of the arbitration agreement to parse the terms of the integrated contract in which it is contained to determine its enforceability, under the Delegation Clause those questions must be decided by the arbitrator. This result is also consistent with *Cheek* which stressed the limited nature of review allowed on a motion to compel arbitration which should avoid making even implicit determinations about the underlying contract. *Cheek*, 835 A.2d at 665-66. As detailed below, the District Court was required to make numerous determinations concerning the meaning and effect of the Credit Agreement in order to reach a decision, all while limiting its analysis based on *Cheek*. These questions belong to the arbitrator under the Delegation Clause and the District Court erred in not ordering the case to arbitration.

**B.** **Assuming the Delegation Clause does not Require the Case be Sent to Arbitration, the District Court's Analysis Was Faulty**

**1.** **The District Court Erred in its Choice of Law Analysis**

As a fundamental matter, The District Court erred in its treatment of the Choice of Law Provision. The District Court reasoned that enforcement of the Choice of Law Provision "presupposes an enforceable agreement exists." JA413, citing *Continental; Mercury; James v. Synovus Bank*, No. TDC-19-1137, 2020 WL 1479115 (D. Md. Mar. 26, 2020); and *Archer W. Contractors, LLC v. Synalloy Fabrication, LLC*, No. CCB-14-3031, 2016 WL 930965 (D. Md. Mar. 11, 2016). However, for purposes of determining whether the Arbitration Provision is valid, there is no dispute that the parties entered into the Credit Agreement despite Plaintiff's argument that the Credit Agreement should be deemed void.[2] Nevertheless, the District Court held that the Choice of Law Provision in the Credit Agreement could not be considered in determining the validity of the Arbitration Provision.

Defendants are not aware of any court that has applied Maryland law in such a fashion other than *Johnson, Bailey,* and the District Court in this case. Indeed, the vast majority of courts that have addressed the issue reach the opposite result. *See,*

---

[2] Of course, under settled federal law the District Court could not have based its choice law decision on an argument that the Credit Agreement was void. *See Buckeye Check Cashing,* 546 U.S. 440 (2006).

*e.g., Overstreet v. Contigroup Companies, Inc.* 462 F.3d 409 (5th Cir. 2006). As stated by the Fifth Circuit:

> As we discussed above, the only issue properly before us is the validity of the arbitration clause itself, not the validity of the contract in its entirety. *See Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 126 S.Ct. 1204, 1209, 163 L.Ed.2d 1038 (2006); *see also Banc One Acceptance Corp.,* 367 F.3d at 430 (5th Cir.2004). As a result, at least for the purposes of our analysis, the validity of the Georgia choice of law provision applicable to the parties' contract has not been called into question. Therefore, we see no reason to disregard the parties' agreement to apply Georgia law to their contract. We turn now to the question of whether the arbitration clause itself was unconscionable under Georgia law.

*Id.* at 411; *See also Gay v. Creditinform,* 511 F.3d 369, 388-91 (3rd Cir. 2007) (Enforcing a choice of law provision in a contract in order to determine if the arbitration clause was unconscionable under the chosen law); *Dziubla v. Cargill, Inc.,* 214 Fed. Appx. 658, 659 (9th Cir. 2006) (same).

Further, one of the cases relied on by the District Court actually supports this result. In *Synovus Bank*, the court did not apply a choice of law provision in determining whether a "clickwrap" credit agreement was validly entered into. *Synovus Bank*, 2020 WL 1479115, at *2. But after finding the credit agreement was validly entered into, the court then applied the law chosen when interpreting the arbitration provision in the agreement. *Synovus* at *3-4 (Finding the interpretation of the scope arbitration agreement was governed by the "choice-of -law provision").

This result is also supported by the Maryland Supreme Court decision in *Jackson v. Pasadena Receivables, Inc.*, 921 A.2d 799 (Md. 2007). *Jackson* clearly held that a choice of law provision can be utilized to determine whether a party was bound by a facially valid contract. *Id.* at 802. *Jackson* addressed whether a credit agreement was enforceable when the defendant argued she never signed the credit agreement, and Maryland law required a signature for the credit agreement to be valid. *Id.* at 802, citing MD COML CL §312-513(a). The defendant further argued that the failure to obtain her signature meant the plaintiff could not collect any money owed on the credit account. *Id.* at 800.

The *Jackson* Court noted the credit agreement provided it was governed by Federal and South Dakota law, and that South Dakota did not require a signature but rather allowed other means to establish acceptance of the credit agreement. *Id.* In deciding the issue, the court held that South Dakota law governed whether a contact was formed and enforceable, stating:

> The Restatement notes that the prime objectives of contract law "are to protect the justified expectations of the parties" and provide a measure of certainty as to their rights and liabilities, and it concludes that "[t]hese objectives may best be attained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby."

*Id.* at 804-05. *Jackson* also recognized that a choice of law provision can be utilized as an "incorporation by reference," giving parties the ability to incorporate a particular state's requirements on an issue without having to specifically include the

23

requirements in the contract. *Id.* at 803.  Under this reasoning, there was no basis for the District Court to refuse to consider the law chosen by the parties in determining whether the Arbitration Provision contained in an integrated contract was enforceable.

The Plaintiff made no showing that the arbitration provision was not valid under Utah law and the District Court did not directly address the issue because it believed *Cheek* constricted the analysis. This is critical since States, including Utah, have different standards for determining whether an arbitration agreement is supported by consideration and therefore enforceable. *See, e.g., Hillbery v. Nu Skin Enterprises U.S.,* 2022 WL 219560, at *5 (D. Utah Jan. 25, 2022) (Holding that consideration for the integrated contract containing the arbitration "covers the arbitration clause as well"); *Baker v. Comcast Corp.,* 2020 WL 3895411 (D. Utah July 10, 2020) (Applying Utah law and holding consideration supporting the overall contract supported consideration for an arbitration provision contained in it). As this Court is aware, various other States also follow this rule. *Senior Management, Inc. v. Capps,* 240 Fed.Appx. 550, 553 (4th Cir. 2007) ("North Carolina law provides that as long as the contract as a whole is supported by adequate consideration, there is no requirement that an arbitration provision …place an obligation to arbitrate on all parties to the contract."). The District Court erred in disregarding the parties' Choice of Law Provision and applying the *Cheek* rule to determine the validity of

the Arbitration Provision, particularly when the chosen law would find the Arbitration Provision was supported by adequate consideration.

**2.     <u>Assuming Utah Law does not govern whether the Arbitration Provision is valid, the District Court Erred in its Interpretation of the Credit Agreement.</u>**

As noted above, the District Court found that the Arbitration Provision was facially valid since it mutually bound both parties to arbitrate. However, the District Court then determined that the Arbitration Provision was subject to another term in the Credit Agreement, the Change Clause.[3] The District Court recognized that the Maryland Supreme Court had never addressed whether provisions in an integrated contract that do not reference, or are not referenced by, the arbitration agreement should be considered in the C*heek* analysis. JA417-419. Although not addressed the District Court, this Court has never considered clauses not incorporated by or referenced in the arbitration agreement when applying the *Cheek* rule. Compare *Hill v. Peoplesoft USA, Inc.* 412 F.3d 540, 543-44 (4th Cir. 2005) (refusing to consider change provision not included in arbitration agreement itself) with *Coady v. Nationwide Motor Sales Corp.,* 32 F.4th 288, 292 (4th Cir. 2022) (considering change clause when the arbitration agreement specifically incorporated the clause). *Coady* recognized that *Cheek* limited the analysis of whether consideration

---

[3] The District Court stated that Defendants agreed the Change Clause was applicable to the analysis. JA417. However, Defendants merely addressed arguments made by Plaintiff regarding the effect of the Change Clause, and made clear the Change Clause was not referenced by the Arbitration Provision. JA402-403.

supported an arbitration agreement to a review of the four corners of the arbitration agreement. *Coady* at 291.

Nevertheless, the District Court determined an intermediate appellate court in Maryland had addressed the issue and found a change clause independent of the arbitration clause should be considered.   JA418, citing *Harby ex rel. Brocks v. Wachovia Bank, N.A.*, 915 A.2d 462, 468-71 (Md. App. Ct. 2007). *Harby,* however, offers no support for this proposition since the court never addressed any argument whether the change provision should or should not have been considered and therefore made no holding on the issue.[4]   The District Court also chose to follow other federal district court cases which considered change clauses in an integrated contract in applying *Cheek,* reasoning that "[w]here an arbitration clause is contained within a broader agreement, the most reasonable way to determine whether the parties entered into an agreement to arbitrate is to read the entirety of the document and to take account of clauses that apply to the entirety of the agreement." JA420. The approach taken by the District Court in inconsistent with *Cheek* since it requires an analysis of the parties' contract generally and is not limited to the terms of the

---

[4]   *Harby* did not even discuss why the change provision in the contract at issue should be considered but rather merely assumed the change provision in the overall agreement applied to the arbitration agreement. *Id.* at 468-69.   The court ultimately found the change provision did not defeat the consideration for the arbitration agreement because it provided for notice of any change. *Harby*, 915 A.2d at 468-471.   In other words, the result of the case was the same whether the independent change provision was or was not considered.

Arbitration Provision itself. Defendants contend it was an error for the District Court to consider the Change Clause since it was not referenced in or incorporated by the arbitration provision.

Even assuming it was appropriate to consider the Change Clause, the District Court still erred. The Change Clause itself contains restrictions on the ability to make changes to the Credit Agreement, as any changes are "subject to the limitations of applicable law." JA073.  Having already determined the Choice of Law Provision was unenforceable until a valid arbitration agreement was found, the District Court took an unusual approach. The District Court found no Maryland authority which supported consideration of a choice of law provision in "determining whether the parties formed an arbitration agreement."[5] JA424. So, instead of deciding the issue the District Court determined that under either Utah or Maryland law there were no restrictions on the Change Clause's ability to unilaterally modify the Arbitration Clause. JA424. As discussed below, the District Court erred in its analysis of applicable law, which was also constricted by its continued reliance on Maryland's *Cheek* rule as being the operative law rather than Utah law which was designated in the Credit Agreement.

---

[5] Defendants note the District Court cited no Maryland authority holding a choice of law provision in an integrated contract should not be applied in conducting a *Cheek* analysis, and Defendants are aware of no such authority.

### a.    Utah Law

With respect to changes to a credit agreement, Utah law provides that a credit agreement is subject to the statute of frauds. *See* UT ST § 25-5-4. The statute provides in pertinent part:

> (1) The following agreements are void unless the agreement, or some note or memorandum of the agreement, is in writing, signed by the party to be charged with the agreement:… (f) every credit agreement….(i)(A) "Credit agreement" means an agreement by a financial institution to:
>
> > (I) lend, delay, or otherwise modify an obligation to repay money, goods, or things in action;
> >
> > (II) otherwise extend credit; or
> >
> > (III) make any other financial accommodation.
>
> (b)(i) Except as provided in Subsection (2)(e), a debtor or a creditor may not maintain an action on a credit agreement unless the agreement:
>
> > (A) is in writing;
> >
> > (B) expresses consideration;
> >
> > (C) sets forth the relevant terms and conditions; and
> >
> > (D) is signed by the party against whom enforcement of the agreement would be sought.
>
> (e)    A credit agreement is binding and enforceable without any signature by the party to be charged if:
>
> > (i) the debtor is provided with a written copy of the terms of the agreement.
> >
> > (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and

(iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Pursuant to the Utah statute, Plaintiff entered into the Credit Agreement. It is undisputed the agreement was provided to him, and he used the credit provided to make purchases. Further, the argument that the Credit Agreement is illusory because Defendants could amend it any time without notice is simply untrue.

Utah law provides that "generally, if an original agreement was required to comply with the statute of frauds, any material modification of that agreement must also conform to the statute of frauds." *Holt v. Katsanevas*, 854 P.2d 575, 579 (Utah Ct.App. 1993); *see also Snow v. Chartway Fed. Cred. Union*, 306 P.3d 868 (Utah Ct.App. 2013). Under Utah law, therefore, the Arbitration Provision, which is a material term in the Credit Agreement, is not illusory since in order for it to be effectively amended (1) a copy of the proposed amendment must be provided to Plaintiff and (2) Plaintiff must agree to the amendment as set forth in the Utah statute of frauds. Importantly, without the Plaintiff's consent, no amendment of the Credit Agreement would be enforceable against him. In fact, the evidence establishes the Credit Agreement was never amended and would only be amended consistent with these requirements. JA363.

Accordingly, when the Change Provision is considered under the applicable law, it does not give Defendants the unfettered right to amend the Arbitration

Provision.  Rather, notice must be given to Plaintiff and his consent must be obtained. When properly interpreted, the ability to amend the Arbitration Provision is more similar to the change provisions that Maryland courts have found do not affect the validity of arbitration agreements.  *See, e.g.*, *Holloman v. Circuit City Stores,* 391 Md. 580 (2006); *Mbougo v. Robinhood Markets, Inc.*, 2022 WL 621797, \*6-7 (Md. Ct. Spec. App. March 3, 2022) (Discussing what *Cheek* required by way of notice and an opportunity to accept or reject a change or modification to an arbitration agreement).

However, the District Court determined it could not address whether the Utah statute of frauds resulted in restrictions on the ability to modify the Arbitration Provision, reasoning it would require considering "the fact that the agreement to arbitrate is part of a credit agreement." JA428. Relying on *Cheek,* the District Court held "even an 'implicit determination about the nature' of the overarching agreement is prohibited." JA428, quoting *Cheek,* 835 A.2d at 665. In other words, the District Court did not find that the Utah statute of frauds failed to place restrictions on the ability to change or modify the Arbitration Provision. Rather, the District Court determined that the Utah statue of frauds did not apply to an arbitration contract and based on the limited analysis allowed by *Cheek*, that was all it was allowed to determine. JA428.  The District Court erred in this decision.

Defendants also identified another a rule in Utah that directly addresses changing or modifying an existing arbitration agreement. *See Pacific Dev., L.C. v. Orton,* 23 P.3d 1035 (Utah Sup. Ct. 2010). In *Orton,* the Utah Supreme Court determined, based on the Utah Arbitration Act, that an arbitration agreement must be in a writing agreed to by the parties, and "to allow modification of an express written agreement [to arbitrate] by less than a similarly explicit intent would simply circumvent the statutory requirements and the policies they vindicate." *Id.* at 1040. The District Court suggested, without citing any authority, that *Orton* might have no effect on a contract that contained a change clause but did not dispute it was "applicable law" which certainly provided restrictions on the ability to modify an arbitration agreement.

The District Court also suggested another Utah case limited the scope of *Orton.* JA430 citing *Createrra, Inc. v. Sundial, LC,* 304 P.3d 104 (Utah App. 2013). However, *Createrra* only addressed the modification of a notice provision contained in the arbitration agreement but at the same time recognized that the core elements of an arbitration agreement could only be modified by a written agreement of the parties. *Id.* at 109. Specifically, after noting most contracts may be modified without a written agreement, the court stated "the legislature has provided that the parties' core understanding must be written out to ensure that the extent of their commitment to arbitration is clearly defined" but that changes to "notice provisions of an

arbitration agreement" were not such an essential provision. *Id.* at 109. In short, Utah law requires that any material change to the scope of the Arbitration Provision, for example removing one parties' agreement to arbitrate any matter, must be in writing and agreed to by the parties.

>           **b.      Maryland Law**

The District Court also found no Maryland "applicable law" that would restrict the ability to unilaterally change the Arbitration Provision. JA425. Again, however, the District Court restricted its analysis by finding that applicable law does not include case law, but rather only includes statutes. JA425. Under this reasoning, the District Court found the *Cheek* rule is not "applicable law." This analysis is in error for at least two reasons. First, even assuming only statutes are to be considered, the court in *Cheek* based its analysis in large part on a statute, the Maryland Uniform Arbitration Act ("MUAA"). *Cheek,* 835 A.2d at 664-665. The Court found the MUAA limited a court's role in determining if an arbitration agreement exists solely to an analysis of the terms of the arbitration agreement, thus requiring mutual promises to arbitrate to support consideration. *Id.* This is certainly applicable law and should have led the District Court to find the Change Provision was modified "to the extent necessary to comply with applicable law" as required by the Choice of Law Provision. Second, the District Court cites only *Continental* for the proposition that applicable law does not include case law. JA425. However,

*Continental* provides no support for its conclusion. *Continental*, 2023 WL 5804281, *7.

Defendants are not aware of any authority that would exclude case law from a State's applicable law. In fact, the generally accepted meaning of "law" suggests applicable law does include case law. For example, Black's Law Dictionary defines "law" to be "the aggregate of legislation, judicial precedents, and accepted legal principals." *Law*, BLACK'S LAW DICTIONARY (8th ed. 2004). Further, in addressing whether an arbitrator disregarded "applicable law" in making an award, the Maryland Supreme Court did not limit itself to only reviewing the application of statutes. *See USC/2005 LLC v. Trio Ventures Assoc.*, 190 A.3d 244, 265-270 (Md. 2018).

The District Court erred in limiting the term "applicable law" and should have considered *Cheek* and its progeny which require reasonable notice of a change and opportunity for the other party to agree to or reject the proposed change to an arbitration agreement. *See, e.g., Mbougo v. Robinhood Markets, Inc.*, 2022 WL 621797, *6-7 (Md. Ct. Spec. App. March 3, 2022) (Discussing what *Cheek* required by way of notice and an opportunity to accept or reject a change or modification to an arbitration agreement). These principals are "applicable law" which limited the ability to change or modify the Arbitration Provision since the Change Clause is limited by "applicable law."

### 3. If the Change Provision is Part of the Arbitration Provision and it Defeats Enforceability, then it Should be Modified or Severed From the Arbitration Clause

For the reasons outlined above, the Change Clause should not be considered in determining if the facially valid Arbitration Provision and Delegation Clause are enforceable. But even if the Court determines the Change Clause should be considered and that it somehow makes the Arbitration Provision unenforceable, the Change Clause, which was imputed to be part of the Arbitration Provision, should be severed from the Arbitration Provision. In this regard, the Arbitration Provision provides that "[i]f any provision of this Section regarding arbitration of disputes shall be deemed to be unenforceable, the remainder of this Section shall be given full force and effect." JA073. The Choice of Law Provision also provides that "If there is any conflict between any of the terms and conditions of the Agreement and applicable Federal or State Law, this Agreement will be considered changed to the extent necessary to comply with applicable law. JA073.

A Court should strive for an interpretation of a contract that makes it enforceable if possible. *See Kelly v. Wash. Suburban Sanitary Comm.*, 230 A.2d 672, 676 (MD. 1967). If the Change Clause is considered part of the Arbitration Provision, it is the only provision that Plaintiff asserts makes the Arbitration Provision unenforceable. The parties' contract allows for the Change Clause to therefore be modified or severed from the Arbitration Provision in order to make it

enforceable. *See e.g., In re Cotton Yard Antitrust Litigation*, 505 F.3d 274, 292 (4th Cir. 2007) (directing the district court on remand to consider whether "severance of the limitations provisions, rather than invalidation of the arbitration agreements, would be an appropriate remedy"). Given that the Change Provision was deemed incorporated into the Arbitration Provision even though not explicitly referenced, severing or modifying from the Arbitration Provision is the appropriate result.

### C.     If the District Court's Application of Cheek is Correct, then Maryland Law is Preempted by the FAA

Defendants recognize that this Court has held *Cheek's* requirement that an arbitration clause must be supported by mutual promises to arbitrate in order to be enforceable was not preempted by the FAA. *Noohi v. Toll Bros, Inc*., 708 F.3d 599, 612 (4th Cir. 2013). However, as discussed above, the District Court's application of the *Cheek* rule goes well beyond simply requiring mutual promises to support the validity of an arbitration clause. For example, in applying Maryland law the District Court determined that (1) a choice of law clause in an integrated contract cannot be applied to determine the validity of an arbitration clause, (2) *Cheek* constricts the ability to enforce a change clause the incorporates "applicable law" and (3) a delegation clause is not enforceable even after finding an arbitration clause on its face establishes a mutual agreement to arbitrate.

The Supreme Court found "the overarching purpose of the FAA … is to ensure the enforcement of arbitration agreements according to their terms so as to

facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The Supreme Court has made clear that the "national policy favoring arbitration" supercedes "state [law] attempts to undercut the enforceability of arbitration agreements." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008); *see also DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 48 (2015) (invalidating a state court's interpretation of an arbitration clause that would "not place arbitration contracts on equal footing with all other contracts"); *Buckeye Check Cashing*, 546 U.S. at 443 (stating the FAA places arbitration agreements on equal footing with all other contracts). As noted by this Court, state law which singles out arbitration agreements for "suspect status" or "disfavor arbitration" are pre-empted by the FAA. If Maryland law requires the analysis employed by the District Court in finding the Arbitration Provision in this case is "illusory," Marland law is pre-empted by the FAA as inconsistent with federal law by treating arbitration clauses differently than any other provision of an integrated contract.

### D.    Other Arguments not Addressed by the District Court

Although not addressed by the District Court, Plaintiff made some additional arguments regarding why the Motion should have been denied. As Defendants argued in the District Court, these arguments also lack merit. For example, Plaintiff argued that the Defendants could not enforce the Arbitration Agreement but rather only the original lending entity could seek arbitration. However, Plaintiff did not

dispute that Spring Oaks is the current owner of Plaintiff's credit Account. Accordingly, Spring Oaks, as an assignee of the original party to the Credit Agreement, may enforce all of its terms, including the arbitration provision. *Dowdy v. Santander Consumer USA, Inc.,* 2019 WL 5455554, *3 (D. Md. Oct. 24, 2019) ("As an assignee, Santander has every right Koons previously enjoyed under the Buyer's Order, and thus it can enforce the Arbitration Agreement.").  With respect to Genesis, it was also an assignee of the Credit Agreement and collected money on the debt.  Plaintiff's Complaint attacks the validity of the Credit Agreement and seeks the refund of payments made under the Credit Agreement. These allegations allow Genesis to enforce the Arbitration Agreement since Plaintiff is attacking its actions as agent and assignee in collecting the payments.

Further, the Arbitration Provision applies to "agents" of FEB, and Genesis was the bank's agent even though it was also engaged as an independent contractor. Plaintiff's argument that an independent contractor cannot be an agent is unsupported. In fact, Maryland courts recognize that independent contractors can be agents:

> the principal/agent relationship is a generic one—a genus, of which the master/servant relationship is a species. Thus, while all masters are principals and all servants are agents, there are some principals who are not masters and some agents who are not servants. Agents who are not servants are regarded as independent contractors.

*See Sanders v. Rowan,* 484 A.2d 1023 (Md. App. 1984). Among other things, an independent contractor agent "is a person who represents another in contractual negotiations or transactions akin thereto." *Globe Indemnity Co. v. Victill Corp.*, 208 Md. 573, 581, 119 A.2d 423 (1956). Here, Genesis "acted as the servicer of the Wayfair credit program for [FEB]," including taking the application for credit, mailing the cardholder agreement to Plaintiff, corresponding with Plaintiff regarding the account, collecting money on the account, and acting as the custodian or records. JA065. Under these facts, Genesis is an "independent contractor agent" of the Bank, as recognized by Maryland law, and is therefore covered by the Arbitration Provision. In addition, Utah law allows Genesis as an agent to enforce the Arbitration Agreement. *See Ellsworth v. Am. Arbitration Ass'n*, 2006 UT 77, 148 P.3d 983, 989 n.11 (Utah 2006) (finding that a nonsignatory of an arbitration agreement may enforce or be bound by that agreement under five theories including, *inter alia*, agency). Accordingly, both Defendants have the authority to compel arbitration.

Plaintiff also argued that Spring Oaks waived the right to compel arbitration by filing suit in Maryland state court to collect the outstanding balance on the Account.[6] In support, Plaintiff relied solely on *Cain v. Midland Funding, LLC,* 156 A.3D 807 (Md. 2017). However, under facts similar to this case, a district court in

---

[6] Plaintiff and Spring Oaks were the only parties in the state court lawsuit.

Maryland found no waiver of the right to seek arbitration. *See Holloman v. Consumer Portfolio Services, Inc.,* 2023 WL 4027036 (D. Md. June 15, 2023). Here, Spring Oaks filed a collection action seeking to recover the small outstanding balance on Plaintiff's Account. JA289-293. Plaintiff appeared in the action after a default judgment was entered and the default was then set aside. JA295. Plaintiff does not assert that any other action has been taken by Spring Oaks in that suit, and indeed no further action has been taken.

Plaintiff then filed the instant class action suit seeking to void the entire Credit Agreement under Maryland law. The issues raised in this case go far beyond the action taken by Spring Oaks to collect the debt, and in fact is entirely based on conduct occurring prior to the time Spring Oaks was assigned the Account. Under Maryland law the necessary parties to Plaintiff's Complaint were not even present in the state court collection suit. *See* MD Code, CJP § 3-405(a)(1) (providing that all persons who have an interest in the declaratory action "shall be made a party"). Just like in *Holloman*, much of what Plaintiff complains about in his Complaint does not relate to anything having to do with Spring Oaks. *Id.* at *10. As noted by the court in *Holloman*, "Courts have explained that 'waiver does not extend to any unrelated issues arising under the contract' and that waiver only extends to other disputes when 'all of the parties of the dispute [are] deemed to be interrelated.'" *Id.* citing *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 294

39

Md. 443, 450 A.2d 1304, 1307–09 (Md. 1982). Here, Spring Oaks simply could not have waived arbitration regarding issues that do not even involve Spring Oaks as it had no role in opening the credit account, and claims asserted by Plaintiff require the inclusion of parties not present in the state court action.

## **<u>CONCLUSION</u>**

For the reasons set forth above, the decision below should be reversed and remanded with instructions to compel arbitration.

## STATEMENT REQUESTING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Fourth Circuit Rule 34(a), Appellant Genesis Financial Solutions, Inc. hereby respectfully request oral argument before this Court. Resolution of these issues would be facilitated if the Court had the opportunity to question the Parties and hear elaboration on the briefing.

Dated: June 21, 2024                    Respectfully submitted,

By: _/s/ Timothy A. Daniels_            By: _/s/ John K. Rossman_
Ryan K. McComber                        John K. Rossman
Texas Bar No. 24041428                  john.rossman@rossmanattorneygroup.com
ryan.mccomber@figdav.com                Rossman Attorney Group, PLLC
Timothy A. Daniels                      PO Box 24140
Texas Bar No. 05375190                  Edina, MN 55424
tim.daniels@figdav.com                  952-201-1507-Phone
**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400             ATTORNEYS FOR APPELLANT
Dallas, Texas 75202                     SPRING OAKS CAPITAL, SPV, LLC
(214) 939-2000
(214) 939-2090 – fax

ATTORNEYS FOR DEFENDANT
GENESIS FS CARD SERVICES,
INC.

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.      This brief complies with the length limitation of Fed. R. App. P. 32(a)(7)
        because:

        [x] This brief contains 9481 words, excluding the parts exempted by Fed. R.
        App. P. 32(f). As permitted by Fed. R. App. P. 32(g)(1), the undersigned has
        relied upon the word count feature of this word processing system in
        preparing
        this certificate.

2.      This brief complies with the typeface requirements of Fed. R. App. P.
        32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

        [x] This brief has been prepared in a proportionally spaced 14-point Times
        New Roman font using Microsoft Word.

Dated: June 21, 2024                    Respectfully submitted,

                                        By: */s/ Timothy A. Daniels*
                                            Timothy A. Daniels

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties who have appeared and registered with CM/ECF.

By: */s/ Timothy A. Daniels*
Timothy A. Daniels